IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                          CR 06-270 JC

DANIEL BILLINGSLEY,

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO SUPPRESS ILLEGALLY GATHERED EVIDENCE**

THIS MATTER comes before the Court on Defendant's *Motion to Suppress Illegally Gathered Evidence*, filed April 8, 2006 (*Doc. 10*) ("Motion"). Having considered the Motion, the parties' submissions, the relevant authority, and having held a hearing on July 26, 2006, I find the Motion not well-taken and it is denied.

**I.    Background**

Based on the highly credible and unrefuted testimony of government witnesses Officer George Waybenais and Sergeant Pat Cordell of the Farmington Police Department ("FPD"), as presented to me at the hearing on this Motion on July 26, 2006, I determine as follows.

On September 14, 2005, at approximately 8:12 a.m., Officer George Waybenais of the FPD received a call in reference to a suspicious vehicle parked in a tunnel within a wash area in Piñon Hills and the Glade Overpass in Farmington, New Mexico. The tunnel serves to redirect run-off water from the wash area. The tunnel is accessible only by traveling through the wash

area.  The tunnel is not a general thoroughfare for vehicle traffic, though recreational vehicles sometimes travel through it.

At approximately 8:20 a.m., Waybenais arrived at the area and saw a green Chevy Blazer parked at an angle inside the tunnel.  Waybenais took the opportunity to observe the vehicle from the north end of the tunnel for five or ten minutes prior to approaching it; he saw no movement inside the vehicle at that time.  As Waybenais entered the tunnel, he observed tire tracks indicating that the vehicle had attempted to travel further into the tunnel but had instead turned around.  Waybenais ran a check on the license plate and the vehicle came back as not being on file.  There are several reasons why the vehicle would come back as not on file--one is that the vehicle was recently registered and had not yet been entered into the data base, and another is that the vehicle was unregistered.

Waybenais approached the vehicle on foot and saw Defendant Billingsley lying sideways in the driver's seat, with his head pointing upward toward the right passenger side.  He observed a small video screen mounted on the lower dash.  Pornography was playing on the video screen, Billingsley was asleep, and the motor of the vehicle was on.  Waybenais observed Billingsley breathing.  Waybenais' firearm was not drawn.

Waybenais knocked on the driver's side window and Billinglsey awakened and opened the window.  Billingsley appeared groggy.  Waybenais then observed  (1) a military-style assault rifle sitting next to Billingsley with the barrel facing down towards the passenger side; (2) a loaded crossbow in the backseat; and (3) a large sword on the front dashboard.  Because all of the weapons were accessible to Billingsley Waybenais became concerned for his safety and drew his sidearm, keeping the gun at his side.  Waybenais advised Billingsley to keep his hands visible and

exit the vehicle. Billingsley complied.

Once outside the vehicle, Billingsley began requesting his cigarettes, which were inside the vehicle. Billingsley appeared somewhat agitated. Waybenais offered to retrieved Billingsley's cigarettes from within the vehicle and Billingsley accepted. While retrieving the cigarettes, Waybenais detected an odor of marijuana inside the vehicle and observed two paraphernalia pipes for smoking narcotics on the driver's side floor board.

Waybenais radioed for backup assistance from outside the tunnel. Having been provided with the name "Daniel Billingly," Waybenais also requested that dispatch run that name. When dispatch inquired if Waybenais wanted to receive the information via radio, Waybenais declined for fear of possible confrontation with Billingsley.

At 8:43 a.m., Sergeant Pat Cordell of FPD arrived as backup, followed shortly thereafter by Officer John Alm. At that time, Waybenais ascertained through dispatch that Billingsley had an outstanding warrant for his arrest out of Santa Fe. After being advised of his *Miranda* warnings, Billingsley admitted to being a convicted felon. Pursuant to an inventory search, a Norinco "Mac 90" assault rifle was retrieved, along with ammunition, marijuana, and methamphetamine.

## II.   Discussion

It is settled that a police officer may approach an individual, ask questions, and request identification without effecting a seizure within the meaning of the Fourth Amendment. *See INS v. Delado*, 466 U.S. 210, 216 (1984). Accordingly, the Fourth Amendment was not implicated when Waybenais made his initial encounter with Billingsley on foot, without a weapon drawn. A seizure occurs when an officer "by means of physical force or show of authority, has in some way

restrained the liberty of [an individual]." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Investigatory detention is permitted under *Terry* where there exists a reasonable, articulable suspicion that criminal activity is afoot. *Id* at 26. Thus, even if Waybenais' initial consensual encounter with Billingsley evolved into a *Terry* stop prior to *Miranda* warnings, which I find it did not, Billingsley was passed out in a running vehicle inside a wash area tunnel at 8:00 a.m.; pornography was running on a video screen; visible to Waybenais and within reach of Billingsley were an assault rifle, a loaded crossbow, and a large sword. Given such aberrant circumstances, the investigative detention is warranted.[1] Next, Waybenais had reasonable suspicion that the vehicle was unregistered upon being informed that it was not on file with the DMV. *See United States v. Tibbets*, 396 F.3d 1132, 1137 (10th Cir. 2005); NMSA § 66-3-1. Moreover, Waybenais was within his legal right when taking the reasonable measure of displaying his firearm, at his side, in furtherance of his own safety. *See U.S. v. Merkly*, 988 F.2d 1062, 1064 (10th Cir. 1992).

In summary, Officer Wayland's conduct *vis-a-vis* Defendant Billingsley was reasonable in all respects and did violate any of Billingsley's Fourth Amendment protections. Therefore, the Motion is denied.

---

[1]Additionally, community caretaking standards may well provide an alternative, lawful basis for Waybenais' conduct given the peculiar state in which Waybenais found Billingsley. *See U.S. v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993).

WHEREFORE,

**IT IS ORDERED** that Defendant's *Motion to Suppress Illegally Gathered Evidence*, filed April 8, 2006 (*Doc. 10*) is **DENIED.**

Dated this 27th day of July, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE